## GERKE vs. CAL. STEAM NAVIGATION CO.

*Fourth Judicial District Court, October, 1857.*

### LIABILITY—PRECAUTIONS.

Where fire, used to generate steam, is likely to prove destructive to property, the persons using it must avail themselves of whatever appliances may have been proved competent to avoid the danger.

Where property has been destroyed by fire, originating from the sparks discharged from the smoke pipe of a boat running upon a navigable stream, in an action brought by the owner of the property, against the owners of the boat, for the damages sustained, he is entitled to a verdict, provided he can show negligence on the part of the owners, either in the construction or management of the boat, at the time, and that the damage was the immediate consequence of the negligence.

The complaint, in this action, sets forth, that defendant is a corporation, duly formed in accordance with law, and named the California Steam Navigation Company ; that on or about the 9th of July, 1856, the defendant was the owner of a boat, called the " Swan," propelled by steam, and that they then caused the same to run upon the Sacramento river, in this state ; that plaintiff was then the owner of certain real estate in the county of Tehama, known as the " Bosque," or " Lassen " ranch, the western boundary whereof is the Sacramento river ; that he caused about one hundred and thirty-two acres of the said ranch, bordering on the Sacramento river, to be sown with wheat and barley, and that, at the time aforesaid, the said grain, and a large

23

quantity of grass, had been put in shocks and cocks, ready to be threshed, and that it amounted, in wheat, to 1,600 bushels, and in barley, to 3,730 bushels, and of grass, about $3,000 in value, and that he also had a fence about the said property ; that the said grain, as it stood, was worth $9,000 ; that on the said 9th day of July, 1856, the wind blowing very hard at the time, the defendant, by its servants, caused the said steamboat Swan, to be run up the Sacramento river, and passed said boat directly past the said field of grain,—the same being under a pressure of steam, created by kindling the fires and heating the boilers, by defendant's servants, &c., whereby the sparks, arising from the fires, ascended through the smoke pipes, or chimneys, of said boat, and which so passing by the property, grain, &c., of plaintiff, the persons in charge of said boat, so unskillfully, negligently, and carelessly managed and conducted said fires, and the defendants so carelessly, &c., having had constructed said smoke pipes, and the servants of defendants, in charge of said boat, so carelessly, &c., run said boat, when the wind was blowing freshly, and without spark-catchers, that a large quantity of fire, and sparks of said fires, coming through the said smoke pipes, or chimneys, of said steamboat, through the careless, &c., management, &c., of said fires, on board said boat, &c., by the hands, &c., thereof, and carelessly, &c., not taking care of the tops of said smoke pipes, by placing thereon a cap, or net work, to prevent said sparks from escaping, which, if placed there, would have prevented the said burning, and which should have been placed thereon, and the careless, &c., manner in which said pipes were constructed, and the neglect of a spark-catcher on the same, the said sparks, &c., were driven, &c., upon the said grain, &c., and the same became wholly destroyed by such fire ; that the fence destroyed was worth $200, the grass, $3,000, and the grain, $9,000, wherefore plaintiff prays judgment for the sum of $12,200.

In the answer, the defendants deny that the fire originated as set forth in the complaint,—and as to the alleged negligence, deny that such fire occurred by reason of any carelessness, &c., on the part of the defendants, or their servants, &c., in the propelling, &c., of the said steamer, or by reason of the careless, &c., management of the fires, on board of said steamer ;—they deny that the said fire occurred by reason of the negligent, &c., manner in which the smoke pipes of

Gerke *vs* California Steam Navigation Co.

the said steamer were constructed or managed,—and they aver that she was navigated in a careful, prudent, and proper manner, and with all proper care,—and that her fires were properly, &c., kept and managed.

The evidence adduced on the trial, established, that on the 9th of July, the wind blowing very freshly at the time, the steamboat " Swan" passed up the Sacramento river, on her regular trip, and that at about 12 M. she passed plaintiff's ranch, the sun shining brightly at the time ; sparks and burning pieces of bark, were seen issuing from her stacks, and being showered upon both banks of the river. It being at the height of the dry season, the grain and grass were everywhere in an extremely dry and parched state, and in a condition to ignite with extreme facility,—and, being once on fire, to burn with great violence, and to spread rapidly. Several other fields of grain, two of which were situated below plaintiff's, on each side of the river, which this steamboat passed on that day were also burned in the same manner as the one to which this action has reference, soon after her passing.

Two of the witnesses, whose testimony plaintiff introduced to sustain his claim, saw the grain ignite from the sparks and burning matter deposited upon it, that is, they saw the sparks fall, and immediately afterwards, the grain commenced to burn, there being no person visible in the field, at that time.

As soon as the fire was discovered, the hands at work on the farm, some thirty in number, besides ten Indians, repaired to the spot and endeavored to put it out, but did not succeed, before thirty-five acres of barley and ninety-seven and a half of wheat, had been destroyed, besides a large quantity of grass and fence. The barley averaged forty-five bushels to the acre, and the wheat forty. The market price of each, at the time, being three cents per pound, while the expenses of sacking, threshing, &c., would have averaged ten cents per bushel. The value of the fence destroyed, was about $175 ; but no evidence was introduced to show especially the value of the grass which was burned,—but a witness, (plaintiff's agent, who had charge of the ranch,) estimated the total damage—including the destruction of the grass—at $13,000, by which it appears, that he judged the value of this item to be a little more than $3,000.

Upon the attention of the captain of the boat being called to the fact of the burning of some of the crops, which were destroyed previously to the firing of plaintiff's, he said : " It is pretty hard on the farmers to have their crops burnt up ; if I thought that the wind would lull in two or three hours, I would stop for that time."

Defendants submitted the case to the jury, on the testimony introduced by plaintiff, after first moving for a non-suit, on the ground that no negligence had been proven,—which motion the court denied, intimating that the above remark of the captain of the boat, was, in the opinion of the court, sufficient to bring the case before the jury.

*E. Cook* and *McDougal & Sharp*, for plaintiff.

*Janes, Lake & Boyd*, for defendant.

*D. Lake*, of counsel for defendant, contended that, inasmuch as plaintiff and defendant had each an equal right, the former, to cultivate the land on the banks of the Sacramento river, and the latter to navigate it with boats, or other vessels propelled by steam, in the ordinary and usual manner, therefore, to entitle himself to a verdict, in this action, plaintiff must, first, show that the fire whereby he was damaged, originated as set forth in the complaint, and secondly, he must adduce affirmative evidence in proof of actual carelessness and negligence on the part of the defendant, through its servants and agents, the captain and others, in charge of the steamboat " Swan," at the time at which the plaintiff alleges that his grain, &c., was consumed and destroyed by the fire so originating :—citing, Rood vs. N. Y. & E. R. R. Co., 18 *Barb.* 74 ; Stewart vs. Hawley, 22 *Barb.* 619 ; Radcliff's Exrs. vs. Mayor, &c., of Brooklyn, 4 *Comst.* 195, 200 *et seq.* and 4 *Penn.* 466.  The counsel further argued, that there was no evidence tending to show any carelessness or negligence, either in the construction or management of the boat in question, or of any part thereof, and that the casualty, by which it was the plaintiff's misfortune to receive the injury, for which he now seeks compensation, was an inevitable accident, occasioned *perhaps* by defendant, but if so, without any default whatsoever on their part, and while in the ordinary and legitimate pursuit of a regular business.

*E. Cook,* of counsel for plaintiff, agreed entirely with the counsel opposing, upon the accuracy with which he had stated the law, that the defendant was not liable, unless their action had demonstrated negligence and carelessness, but contended that the circumstances, as proven, attending this destruction of plaintiff's property, displayed negligence of the grossest character, and amply sufficient to render defendants liable for the damage sustained by plaintiff; and further argued that the testimony having disclosed that the captain of the " Swan" was aware of the danger caused to property of land owners along the banks of the river, upon which he was running, by the sparks discharged from the smoke stacks of his boat, the jury must find for plaintiff, if they believed that the captain, with this knowledge, could have prevented the casualty by the exercise of *greater* care than that which he actually employed,—as, for example, by deadening his fires, and running with a consequent decrease of speed;—citing, on the point of care, with a knowledge of danger, Earing vs. Lansingh, 7 *Wend,* 185, and Dygert vs. Bradley, 8 *ib.* 469.

Plaintiff requested the following instructions, which were given :

1st. If the jury believe, from the evidence, that at the time and place of the alleged injury, a high wind was blowing, that the season was dry, that no spark-catchers were attached to the chimneys of the boat, and that, for these reasons, and the nature of the fuel used in the furnaces, and the speed at which the boat was being run, the person managing said boat, as a reasonable and prudent man, should have known, that in passing the plaintiff's farm with the boat, under the circumstances, he would greatly endanger the property of plaintiff, by setting the same on fire, and the jury believe that the person navigating said boat, did so pass plaintiff's farm, and did so communicate fire to plaintiff's property, and destroy the same, they may infer negligence, and if they find that there was negligence, the plaintiff should recover.

2d. In determining the question of negligence, the season of the year, the dryness of the season, the state of the wind, the manner in which defendants guarded against accidents, by using spark-catchers, or otherwise, the fuel used, the speed of the boat, the knowledge of the captain as to all these, warning given him, and the degree of necessity for everything done by the captain, may be considered by the jury.

The following were given at the request of defendants :

1st.   The fact of the fire, which consumed the plaintiff's grain, being communicated by sparks from the defendant's steamer, is not sufficient evidence to establish negligence on the part of the defendant.

2d.   The Sacramento river, at the point where the fire occurred, being navigable, the defendants had a right to navigate the said river, at all times and seasons of the year, and were not obliged to lay up the steamer by reason of the weather.

3d.   The persons engaged in raising crops on the margins of the navigable rivers of the state, cannot recover for injuries to crops, occasioned by fire communicated by sparks from steamers, without proof of negligence in the management of the steamer, from which the fire is communicated.

4th.   Steamers have a lawful right to navigate the rivers of the state in the dry as well as in the rainy season, and the fact that the fire, in this case, occurred in the dry season, is no evidence of negligence.

HAGER, J.—After stating and explaining the pleadings, and nature of the action, substantially charged the jury as follows :

By statute law a part of the Sacramento river is declared navigable. At the point where plaintiff's property was situated, at the time of its alleged destruction, it was and is a navigable stream and public thoroughfare, and defendants, at any and all times, had a legal right to enter and navigate it with steam, or other boats, for purposes of trade and carriage, or for such other as they are ordinarily used.

Steam is now used as a common motive power ; science and art have adapted and applied it to propelling boats and machinery, and its value and use, at the present age, is too common and necessary to be questioned or dispensed with.

As an ordinary rule, an action lies for any act done by a man in using his own property, whereby the rights of another are injured, unless such act be altogether inevitable, and beyond his control.   Where fire, used to generate steam, is likely to be destructive to the property of another, it is necessary that the owner of the boat using it, should adopt the ordinary precautions, if any there be, which the disclosures of modern science and invention have shown necessary and efficient to prevent damage, where damages may probably occur.

The same precautions may not be necessary to a steamer navigating the ocean, that would be required to rail road locomotives, or boats navigating narrow internal streams, through agricultural or thickly settled regions. Then again, in case of a low-pressure engine, burning coal, the same precautions, care and diligence may not be required as there would be if the high-pressure engine, burning wood, was used.

The first question for the jury to pass upon is—did the defendants, by their agents, employed in navigating the steamboat " Swan," and while in the act of so doing, by sparks discharged from the smoke pipes thereof, fire and destroy the property of plaintiff?

If, upon the evidence, you find affirmatively on this proposition, you should inquire and determine, whether or no, with ordinary care and diligence, the fire might have been prevented? Is it immediately attributable to the carelessness or negligence of defendants, or their agents, either in regard to the construction or management of the boat, or its appurtenances? Or was it inevitable and beyond their control?

The mere fact that plaintiff's property was destroyed, and that he has sustained damage, in consequence of the act of defendants, does not, of itself, make them liable, or entitle plaintiff to recover; to give plaintiff that title, two things must concur, damage to himself and a wrong committed by the defendants.

Defendants were engaged in a legal employment, and if, as a consequence, damages have resulted to plaintiff, they cannot be held liable merely because they have enjoyed a right accorded to them by the law of the land ; something more than this must be shown.

Navigable rivers, like public roads, unless their enjoyment is restricted by law, are free and open to all for ordinary purposes of conveyance and transportation ; and in addition to showing loss and damage to his crops, &c., occasioned by the defendants, the onus is upon plaintiff to show it has been occasioned by defendant's culpable negligence and carelessness.

If plaintiff has failed in this, the defendants are entitled to your verdict.

If you should find that the fire was occasioned by the defendants, in the manner alleged, and that it was not inevitable and beyond the control of defendants, but owing to their culpable negligence and carelessness, plaintiff is entitled to recover such damages as will cover the actual loss, which, upon the evidence, you find he has sustained.

Verdict for plaintiff, $9,200.